Whenever you're ready, Counsel. Thank you, Your Honor. May it please the Court, my name is Colin Prince. I am representing Paul Swallow. We've got two basic issues. We have the motivation enhancement that the district court applied, and we have the dangerous weapon enhancement that the district court applied. The case was a simple assault. Mr. Swallow and his wife were at a casino outside Spokane. Ms. Swallow. You mean simple in the case of it's a relatively non-complex case? I do. Simple versus aggravated assault, because the assault was pretty aggravated. Not in the sense that there was a dangerous weapon. Well, it left the victim with permanent brain injury. Agreed, Your Honor. And I think the question here is, what did he use to do that? And the district court found shod feet against concrete or asphalt surface as the defendant lay prone, helpless on the ground, and the defendant, by his own admission, stomped on him. I think that's what drove the district court's enhancement, did it not? In part. The district court ruled, and I'll shift to the dangerous weapon enhancement because it sounds like it's appropriate to start there. The district court ruled that it was the concrete. In sentencing, the district court pulled out Rocha. Its clerk pulled it that morning. There had been no briefing whatsoever about whether a concrete surface qualified as a dangerous weapon or not. But Rocha was the case where the inmate was thrown over the tier in the prison? They attempted to throw the gentleman over, yes. But here, the victim is already on the ground, and the surface is, I don't know. I guess, what if he put his head in a vice? Would you agree that that would be a dangerous weapon? I would agree that the vice is a dangerous weapon. What's the difference between a vice and stomping on somebody's head on a hard surface with shod feet? The difference is that the Ninth Circuit ruled in Rocha that, essentially, we would be merging the crimes of use of a dangerous weapon and not use of a dangerous weapon. And granted, that was a case law for shod feet being found as an enhancement. I do not believe the record supports that the district court ruled that shod feet. That's not my question. You would agree that there is case law from other courts establishing shod feet? I would, Your Honor. I would, Your Honor, yes. Can we not affirm on any ground supported by the record if that's true? I do not believe that the shod feet in this case qualifies. I'm sure Your Honors looked at Riggins. Riggins is a case that I think is exemplary of exactly the sort of theory that anything can be used as a dangerous weapon, where a mother pulls out a shoe and beats a 2-year-old with it, intentionally using it. But even Rocha says that we look at the manner in which the implement is used. Yes. And isn't that what the district court did here? The district court looked at the concrete and said it believed that was a dangerous weapon as it was used. So, yes, I think the answer is yes. But had the victim been simply lying on the parking lot surface, there wouldn't have been a problem. It was the application of force from the shod feet between the concrete surface and the victim's head that caused the district court to conclude that there was a dangerous weapon here. Right? I agree, Your Honor. I think what matters is whether we're discussing the foot, the shod foot, or the concrete. And as I read the record, the district court was very clear that it was concrete that was the weapon. And the problem is, is it under- The district court wasn't saying that the concrete leaped up and beat the victim on the head, was he? He was saying it was the stomping on the victim's head between the bottom of the shod foot and the surface of the parking lot that produced these horrendous injuries. Yes, Your Honor. But, of course, Mr. Swallow could have accomplished that with a shod foot or with a bare foot. So, as I read Rocha, if I were to take someone's head and slam it with my hands into the concrete, the concrete is not a dangerous weapon. And what the government is asking is that if I take my foot and slam someone's head into the concrete, well, now the concrete is a dangerous weapon. And so- I'm still trying to understand the intellectual distinction between putting somebody's head in a vice and stomping on their head with a foot on the concrete. It seems to me if we're looking at the manner in which the assault has occurred, that the enhancement is appropriate here. I think that the distinction may be that the earth is always present in any fight. And the fact that somebody simply has their head kicked into the ground or thrown into the ground, it can be accomplished without a weapon. And Rocha of the Ninth Circuit stated that we generally think of congressional intent is that Congress thought of a weapon as an object which we pick up and use, which is exactly consistent with Riggins. And that's not what happened in this case. So, Counsel, are you saying that concrete could never be a weapon? Because if we were to follow that guidance from Rocha as you're applying it, it would mean that concrete could never be found to be a dangerous weapon. Is that what you're saying? I don't think the court really needs to go quite that far. I think in this circumstance it is. Why wouldn't it? I mean, if you're saying that the weapon has to be wielded, you're never going to be able to. It seems to be hard to find circumstances where someone would be wielded unless someone said to an individual, put your head on the concrete so I can stomp on it, then perhaps the concrete is being wielded. But given what you're suggesting, it would seem that the court could never find the concrete to be a dangerous weapon. I think, to answer Your Honor's question, any time that a person picks up another and body slams them into the ground or kicks them into the ground, it is a bad assault, which a district court can obviously consider under 3553. This is effectively procedural. Under those circumstances, as I read Rocha, if I body slam someone into the ground using my hands, it is not use of a dangerous weapon in the concrete. And I think that what the government is effectively asking for is to open up a line of cases where if I slam someone's head into the ground with my hands, the ground is now a dangerous weapon. If it's my foot I use, it's — I'm sorry, hands would not be a dangerous weapon. Feet would be a dangerous weapon. And then I think the next thing that would happen is we'd get a case where a guy elbows somebody's head into the ground and then knees somebody into the ground. And all of a sudden now we have a bunch of lines of cases that are all separate about whether the ground is or is not a dangerous weapon depending on what body part we use to slam it into it. And that doesn't make any sense. Can I ask this? There's no reason for us to give a different meaning to dangerous weapon in the guidelines provision than in the statute, right? The A3. The 113. It should be the same. I don't see any difference, Your Honor. So you mentioned that we have — it seems like all these cases are from the Eighth Circuit involving people with shoes on. I don't know why that happens in the Eighth Circuit. I agree. It's a dangerous place. But why shouldn't we just follow those cases? I guess they seem — I mean, you could go either way on that question, but they seem sound to me. Why wouldn't we just follow those and say we're going to apply the same meaning for dangerous weapon in the guidelines that they've applied in the statute? Why is a shoe not a dangerous weapon in other cases? In one case I remember it was definitely a tennis shoe just like in our case. I think there's two reasons. One, the district court didn't rule that, and I realize that's kind of a dodge, but I think that's appropriate to send back to the district court for it to make a ruling on it because there was a reason it did not address that. And I think it was uncomfortable getting there. The second reason is I don't think that the district — I think the district court was rightfully wary of what was going on, which is simply declaring any fight in which someone gets kicked a dangerous weapon because you happen to be wearing your tennis shoes. I think of myself in Spokane. It gets cold there. If I'm going to work and I happen to be wearing my gloves and I get into a fistfight on the street, I think I would have a pretty strong argument that the fact that I happen to be wearing my mittens does not make them dangerous weapons simply because they protected my hands and allowed me to deliver a more furious blow. I think it is a different question when a mother picks up a shoe and beats her 2-year-old child with it. She's clearly using it as a weapon. I thought there was some case law that said if a professional boxer beats up somebody that that could be assault with a deadly weapon. I think that sounds appropriate to me, and I believe that's correct. But again, I think that's a good reason to send it back to the district court to make a factual finding about whether Mr. Swallow used this particular shoe. So I don't think that the Ninth Circuit needs to make a ruling that all assaults where a person kicks someone and happens to be other than barefoot is using a dangerous weapon. Yeah, I agree with you on that. But our cases say that you have to look at the manner in which the thing was used. And then, in addition, it has to have been used in a way that's likely, I think, to inflict serious bodily injury. So, yeah, just tapping someone in their leg while they're laying on the ground with your tennis shoe on, that's not going to qualify. But as Judge Talman was indicating, the manner in which the shoe was wielded here was quite deliberately used to inflict grave bodily harm on this person. So I don't see why that's all we would need to say. And then, yeah, we'd leave all those other shoe shot foot assaults for another day, right? I would have to respectfully simply disagree, Your Honor. I think the big distinction is this is just shoes that happened to be worn. Mr. Swallow could have accomplished exactly this assault whether or not he was barefoot. He just happened to not be barefoot. And in Wiggins you have a case where somebody picked up an everyday object and used it as a weapon. That is not the case here. So if we sent the case back based upon your recommendation, and then the district court said, well, I now find explicitly that the tennis shoe was a dangerous weapon, would you have the same arguments or would you not have any arguments? Because it seems to me that we can reasonably infer from what the district court found that that would be the finding. So are we sending it back just for the district court to put that into its finding and then in order to support it? No. Number one, I think the district court could have ruled that, and it was very clearly put to the district court at argument, and it did not do that. I guess that's not my question. My question is if we send it back, this court said, I find in this case the tennis shoe is wielded against a concrete as a dangerous weapon, would there be any reason for us to be able to challenge that or you to be able to challenge it under Rocha or Wiggins? Yes, Your Honor. I would challenge it under Wiggins as distinct because it simply happened to be worn in its usual fashion in the same way that gloves I might be wearing down the street, very different than picking up an object like a shoe and beating somebody with it. And I can see I'm just – Mr. Prince, would the district court have been appropriate to depart upwards from the guideline based on the severity of the injuries and the defendant's prior record of assaults? To vary upwards under 3553? Yes. I think the district court very clearly could have considered that, yes. Okay. All right. The only other point I'll reserve a moment for rebuttal. Give you some time. Thank you, Your Honor. We kept you over with the question.  I see Judge Watford shaking his head. I don't think so. All right. I will take that as a good indication. Okay. Thank you. May it please the Court and Counsel, my name is James Gakey and I represent the United States. The Court did find that shod feet were used in this case along with the floor. I'm quoting, The Court finds that the kicking and stomping on his head while he lied there unconscious, and that's what the PSR said, was clearly a use not only of the kicking and the stomping, but the concrete floor. So that finding has already been made about shod feet. That doesn't say anything about the shoes. Were you the person who prepared his sentencing? I was. Because you were trying. I can't grant you that. You were serving it up for the district court on a silver platter, but for whatever reason the judge didn't want to take it. So maybe you can address Judge Bulwer's question, or I don't know who asked, but I guess I don't really see much of a point in sending it back for the district judge to make an explicit finding, but is that why wouldn't we do that if we had some doubt? I think the record is sufficient that the Court made an implied finding, that the feet were used in conjunction with the floor like a vice. And I do agree with the judge's question. That's exactly what would happen. If this matter goes back, I think it's clear from the colloquy and the judge's sentencing remarks, the judge would find that shod feet were used in this case, and I think the judge did find that at the time of the sentencing. And in addition, the ultimate question here is the reasonableness of the sentence. And Judge Holman's question, couldn't the judge have departed upward either under the guidelines or under 3553 factors? Yeah, I mean, yeah, it would be nice if that were the law, that we could just skip straight to reasonableness, but we do have to first determine whether the Court got the baseline correct. And if the Court somehow made an error on this point, I think we would have to send it back, even if we thought the ultimate outcome would be the same. Absolutely, Your Honor. But I do think on this record that it is clear the Court did make, did not make clearly erroneous findings with regard to the guidelines. The Court analyzed the severity of the injuries, analyzed the use of the concrete in conjunction with the shod feet, in conjunction with the shod feet. Roka is a case where someone's body stepped into the floor once. This is a case where, as Judge Holman said, an individual stood over the victim, kicked him repeatedly with shod feet against the concrete floor. But the thing is that Judge Bybee and Rocha was saying that a weapon has to be wielded. It isn't just that the person hit the floor once, right? The language in this is very specific about the fact that a weapon has to be wielded, and that's why, in that case, it's actually a fairly significant step of reversing a conviction, right, based upon it. So why wouldn't we use that as an example or as the guiding principle as it relates to dangerous use of a weapon? And I agree with the Court that that was very important in Roka, but Roka is a different matter. Roka is under 113A3. Right. This is under 113A6. In Roka, the use of a dangerous weapon had to be an element found by the jury. So that's a different factual situation than we find ourselves here. This is simply the application of the guidelines. But why would the definition be different? I mean, certainly the standard might be different, right, as to how they make the – whether or not to defer to the jury's determination or not. But are you arguing that because it was under the assault statute that the definition of dangerous weapon should be different? Well, I think the Court has not confined itself to that definition. The shod feet case is out of the Eighth Circuit, and there's an unpublished case out of the Ninth Circuit cited in the government's brief finding shod feet to be appropriate. That's not a wielded weapon. That's a situation where the defendant uses what's available to him in the situation to make the assault worse. And this is, of course, an aggravated assault, to make it worse. In this case, he used shod feet, and he used what was available to him, a concrete floor. And he kicked the victim's head repeatedly against that floor like a vice. Well, what – I'd like to, unless my colleagues understand this, but I'd like to shift to the other enhancement, because it seems that you're suggesting a type of standard that is beyond what is sort of common sense, which is basically the judge appeared to apply a but-for causation standard, which would open up this particular enhancement to a whole host of transactions where money was simply involved. And there's not even a specific finding in this case that the individual is particularly motivated by payment, and oftentimes those cases are slightly different. So why wouldn't we send it back on that particular application? Well, I think in this case there were findings by the Court that methamphetamine, the money, was the genesis of the assault. It's inextricably intertwined with the severity of the assault. Right, but the question is about whether or not the judge basically established a but-for standard, which is not the plain language of the enhancement, right? It doesn't say that but-for and money being involved or payment being involved, that this would have occurred, right? That's not what the language says. That's not what the language says, but it's also not – there's no case law that prohibits it either. I mean, the context of this situation and the severity of the assault is motivated by the context of why are these people in combat, mutual combat? The defendant has crafted this argument that, well, it's all about the wife questioning his manliness. But the defendant didn't understand, had it not been for this dispute over methamphetamine, the dispute over the $10, he wouldn't have been in this. But, yeah, I just think your argument on this is completely wrong. That guideline is geared toward the for hire situation, right? And that's – the language says that. The commentary says that. I just don't think – that's why I don't even want – I don't need to hear anything on this. I think we're going to have to send it back on that point. Maybe you'll get the same sentence because the judge can give a high end or go up. But that is just – this guy was not hired. He wasn't paid or given anything of value to commit the assault. And I would concede that. I would concede there is not a payment, an exchange of money for the assault. This is not a for hire situation. But there's another guideline for that. But it is – No, that is this guideline. That's what got applied here. That's what it's all about. Well, that's an – this enhancement. The commentary says apply this particular provision. I don't remember the numbers now. It's to be read in the same way as for that other, the 2A. The murder. Yeah, the murder one. And you go look at that, and that's clearly talking about where you get paid or offered something. And so they're supposed to be read to do the same thing. Why they use different language, I have no idea. But they told us that they want it to be construed in conjunction with the other one. So I just think that your argument is not going to fly on this point. All I would say on that, Your Honor, is that there is certainly not an exchange of money that – where someone paid for the assault to occur. I have to concede that. That didn't occur here. But the context of it was the dispute over something of value. And ultimately, I think that is a question, whether the Court appropriately applied these facts to these sentencing guidelines. I think the Court did. And I think there's a sufficient basis in the record to find both enhancements are applicable, both the additional – the four-level enhancement for use of a dangerous weapon. As the judge acknowledges, a number of cases out of the Ninth Circuit and a few – or out of the Eighth Circuit and a few out of the Ninth Circuit, the shod feet are appropriate. As I argued at sentencing, a shod foot allows somebody to kick someone more forcefully, more times, and in this case, against another surface that enhances and makes the aggravated assault much more difficult. Counsel's mittens case will deal – this Court can deal with that when it arises. That's not this case. Well, if it's Muhammad Ali wearing the mittens, that might make a difference. I think it would, Your Honor. And I think there was some suggestion in the PSR that this individual, in this case, actually, had some experience with some professional fighting. It has nothing to do with his feet. But there was, ironically, a suggestion of that. The commercial arts guy. In this case, there was some suggestion of that in the PSR. In a cardboard box behind the Safeway. These assaults are varied and interesting, as the Court knows. So, based on the court – the district court's record here, I do believe there's a basis, in the government's dismissal, there's a basis for both these enhancements to apply, and that ultimately, this sentence the Court implied or imposed, which was in the middle of the guideline range, is a reasonable sentence that should be upheld by this Court. All right. If the Court has no further questions. Thank you very much, Mr. Perkins. Thank you, Your Honor. Mr. Prince, absolutely. I'll give you a couple of minutes. I'll be brief. It sounds like I'm not going to really address the motivation enhancement, because I think, obviously, on the plain language – Snatch defeat from the boss. Precisely. I could not have put it better. I will avoid snatching. I'll just leave that be. I think it sounds to me like the Court's overall concern on the shod foot enhancement is, are we just sending this back to the district court to waste the district court's time and declare the shod feet a dangerous weapon, and this is essentially just a waste? Well, I mean, under Cardey, he's got to properly calculate procedurally the guideline range, and I guess the question is whether or not we're comfortable enough, based on the record, concluding that he was right at least as to the shod feet enhancement, but maybe not with regard to the monetary enhancement. Yes, Your Honor. The side gets a little. Yes, and unfortunately I want the government to get none. Mr. Prince, you're doing an able job. Thank you, Your Honor. And I think, Judge Bulwer, you brought up the principle of wielding, and really what is the principle that separates an object, a dangerous weapon, from just anything else? And what I would like to see is this go back to the district court. I do believe there is a reason the district court avoided very actively making a finding that this was a dangerous weapon, and I have to respectfully disagree with my colleague that the district court ruled on shod feet. I think it very actively avoided that. It said, as Mr. Gecki said, this was a use not only of the kicking and stomping but the concrete floor. The government, Mr. Gecki, got back up after that finding, after the district court said, I find this, and said, I quoted, also, five times, also, over and over and over again, in conjunction with that paved surface, also a weapon. And the district court just said, all right, now I've made my notes, yada, yada, yada. It did not make this finding, and it's for a reason. And I think that what should happen is that should go back to the district court. How do you read that? I'm looking at ER 82, which is page 35 of the transcript, where he's basically adopting the PSR, and he says starting at line 7, and I think it's clear, and the court finds, that the kicking and stomping on his head while he was laying unconscious, and that's what the PSR said, was clearly a use not only of the kicking and stomping but the concrete floor. It makes a huge difference, end quote. Isn't that, he's saying both, shoes and the floor? That's how I read it. I read that, Your Honor, is not only kicking and stomping him, he is making a use of the concrete floor. And I think the government understood that exactly as I do, because Mr. Gecki got up and said, Your Honor, also, I understanding the court's finding and agreeing with the court's finding, I would also offer for the record that Mr. Swallow testified that he kicked him, you know, kick struck the victim several times in the chest, his head as well. Also agreeing with the court, the government also believes that the sketchers, the fact that the foot was shod, did make it. The government understood that the district court was saying, I am finding the concrete. I am finding the concrete is the dangerous weapon. I'm still back on page 82. It says on lines 13 and 14, because it's a combination of the both. It's a combination of the kicking happened, whether it's concrete or the shoe. The kicking. I mean, I think we're splitting hairs. We may just be splitting hairs, Your Honor. Let me ask this question. Could the combination of the shoes and the concrete be a dangerous weapon? I think. Focused on them as discrete objects, but I don't know that the law limits that determination. Can't an individual wield two different types of objects or surfaces, right? And so why wouldn't we, rather than have to figure whether or not the district court is going to say shoes, the sketchers exactly were the dangerous weapon, say that the district court clearly found that the combination was a dangerous weapon. Why isn't that enough? So, number one, I absolutely agree with you, Your Honor. There can be multiple. We could have endless numbers of dangerous weapons. The problem under Rocha is that we have this line of reasoning that says, if I use my hands and feet, I have not used a dangerous weapon. No matter how bad the assault is, no matter how if I. . . That's actually not what Rocha says. Rocha says a weapon has to be wielded, right? That's different than simply saying every time. It doesn't say every time an individual uses their bare hands, it can never be a dangerous weapon. It says a weapon. . . Judge Breyer was thinking very carefully. A weapon is something that has to be wielded, right? So I can wield things in terms of their using them for a particular purpose, including concrete and shoes together, right? I agree, Your Honor. As I read Rocha, it says body slamming. And its concern was this, we are going to merge the crimes of assault with a weapon and assault without a weapon. And I think that is an important distinction. And so I think that the district court. . . This should go back to the district court. I think that the district court can make a distinction between Riggins and this case. This happens to be an item. . . I fundamentally go back to the policy. We are punishing someone who has made a choice to intentionally pick up something to augment the force of their attack. And that's not what happened here. That's what happened in Riggins. The mother picked up something to beat a child. And I think that is an important distinction because otherwise we start applying dangerous weapon enhancements for people wearing clothes, for mittens, for shoes that they did not choose. But it's all context-based. I mean, you are going to have differences depending on how the implement was wielded. I agree, Your Honor. And I think the district court should go back and make that finding. Was there an intent? Did Mr. Swallow specifically. . . Should he be punished for this, for wearing shoes because he specifically. . . But why shouldn't we follow the Eighth Circuit so we don't create a circuit split on this issue? Because the Eighth Circuit is wrong. I see. Okay. All right. Fair enough, Mr. Prince. Thank you very much. Thank you, Your Honor. Case just argued is submitted. Always enjoyable to have both of you in the courtroom. Thank you.
judges: Tallman, Watford, Boulware